May it please the court. Counsel, my name is Nathan Olson. Along with Christine Branstad, I represent the appellant, Jason Carter, who is here in the room with his wife, Shelley Carter. A rogue DCI agent ignored exculpatory evidence, followed a baseless theory to create a criminal charge against Jason Carter. Please don't let the volume of the unlawful acts of the defendants take away from the severity of each of them. Agent Mark Ludwick concluded that Jason was guilty based solely on listening to the tone in a 911 call as he traveled to the crime scene. He then ignored crucial exculpatory evidence that exonerated Jason. When Ludwick could not get approval for a criminal charge because of lack of probable cause, he then switched, manipulating and lying to Jason's own father, Bill Carter, in an effort to push a civil case against Jason. A successful civil case? Yes, Your Honor, a successful civil case. Proceed. I would point out that that case was based on a significantly reduced record of information because Agent Ludwick and the other defendants secretively... It's final though, Counsel. It's final. It is a final judgment. Thank you. Proceed. Ludwick manipulated Jason's father, Bill, over dozens of meetings, filed suit, and that circumvented Jason's constitutional protections. By Ludwick's own words, he finally got Bill and he was concerned that Bill was going to turn. Not only that, defendants also violated civil court sequestration orders, sat in the press room of that civil trial, listening to all the testimony and sending messages back and forth to other sequestered witnesses, even though they were themselves witnesses to be called in that civil trial. I don't recall. Was action taken by that state court judge? It was not, Your Honor. Okay. Proceed. Partially because that state court judge was not made aware of it until much later. So neither party griped about it? Not at that time because it was unknown until the criminal case came about and we received the copious amounts of discovery through that criminal case. And no bar complaints or anything like that or disciplinary complaints or any... There were not disciplinary complaints. Proceed. And that information, of course, is not in the record anyway, but there were. Defendants hid exculpatory evidence. And that exculpatory alibi evidence, confessions from other parties, that was kept away from Jason Carter's defense, from prosecutors and from the civil court and that civil jury. As just one example, Ludwig knowingly buried over 80 discs of evidence from that criminal case. He put it in an evidence locker and actually both defendants buried it a month before the criminal case. Those were the records. And the actual recording of that information varied drastically from the written reports that were turned over to Jason and his defense counsel. The significance of those differences is the audio recording showed exculpatory information that the written reports that were turned over did not show. This was reckless. It was misconduct and it was purposeful. It was a tunnel vision attempt to pin this crime on Jason Carter despite the mountains of exculpatory evidence pointing otherwhere or in other places. There are five counts before this court on appeal. But we're hearing a motion to dismiss. The district court below, and we asked the court not to, but the court considered significant information that was outside of the actual criminal complaint. The complaint here is presumed true. The well-pledged facts are. And a district court may consider things in the public record, things in the court record, and things that do not contradict the pledged facts. Unfortunately, the district court in this case did. That should have changed the motion to dismiss to a summary judgment motion. We asked the district court to do that. It did not. But if you take a look at Levy v. Ohl, it's an 8th Circuit 2007 case that specifically talks about what that district court may consider and may not consider when facing a 12b6 motion. But also Little Jim Life Science, that's an 8th Circuit 2008 case, that specifically talks about a district court may consider facts outside of the complaint that are either embraced, that don't contradict the pledged facts, but also are not crucial to a defendant's motion to dismiss. Considering the Carter v. Carter civil case, as well as other information crossed that line, we asked first that this court reverse and send this back down because it should have been a motion for summary judgment that the court transferred it to as opposed to the motion to dismiss. But even if it was properly before the court, each one of our counts survives a motion to dismiss. Our count 1, false arrest. The case law is, everyone knows, false arrest claim. How does that look? What does that look like from a qualified immunity perspective and what needs to be pledged? Well, what's your best case that sort of tracks the facts that are alleged here that would make this clearly established? Judge Grunder, I would say, first of all, we have the QLV Burris case. We've cited that in our briefing. But I would also look to Wilson v. Lawrence County, isn't it? It is, Your Honor, yes. Thank you. Those two cases both track. QL, while it was an arrest case as opposed to a warrant case, clearly sets out that an investigation, especially when there is known exculpatory evidence with that arresting officer within their knowledge, further investigation is necessary and that no probable cause is supported when there's more investigation that could and should have been done based on the known exculpatory evidence, especially when there's time to do so. Wilson also stands for that. Even though Wilson is also a substantive due process case, the facts of Wilson also had a false arrest case built into it. Both those claims were brought in Wilson. And what's important that I point this court to in that actual Wilson v. Lawrence County case, if you look at Penn site 951, it talks about for a case to be clearly established or for a right to be clearly established, you don't have to fit into all four corners. It doesn't have to fit in the exact same box. All that needs to be known is that it has to be apparent from pre-existing law that the conduct was unlawful. And that both points to the Vaughn v. Ruoff 8th Circuit 2001 case, but also the Anderson U.S. Supreme Court case. So here from pre-existing law at the point in time when the defendants took their action, it was clear they can't ignore exculpatory evidence, that they're not going to get the benefit of a probable cause finding if they secret away information that points away from Jason. And because they had significant amount of time to do more investigation, it was necessary to do that investigation. Judge Ruder, those are the cases that support us in how they do so. Regarding, and I would also point out, we have pled facts sufficient to weigh against a finding of arguable probable cause. While that's a lower standard in this circuit than actual probable cause, no reasonable officer, and cases set out that no reasonable officer is going to ignore or should be allowed to ignore exculpatory evidence. I would also point out specifically, because I have reserved six minutes, I'm happy to answer any questions throughout there, but I would move on to our state law claims. That's count five and count six. Specifically, this court about two and a half years ago, this circuit remanded this entire case for one specific question. Does qualified immunity apply? The district court though actually addressed all counts, including count three, which was dismissed by this court again four and a half years ago. The district court just exceeded its remand order. And so I would point out and I would request that this court summarily remand those two claims just based on exceeding the remand order by that district court, but also based on the fact that we have also pled sufficiently all facts necessary to meet those allegations at the motion to dismiss stage. Why do you say that the remand was limited? Judge Shepard, in reading the remand order, it says this case is remanded to address qualified immunity. And I'm paraphrasing, but it doesn't say each claim. It's to address the qualified immunity question on counts one, two, and six. And so that is why we say that we're using the actual language from the remand order. Well, my other question is, if the state law claims are not determined to be inextricably intertwined with the qualified immunity issues, should the district court, would the district court even have jurisdiction to proceed with the state law claims? It would. And we've addressed that in our brief, but it does have jurisdiction. It's permissive jurisdiction. It's not a requirement, but it would be able to address those claims because they were intertwined with our failure to investigate a claim, which ties in with a malicious prosecution claim. And our abuse of process claim, which is count five, does tie in with our count two, which our count two is a due process claim regarding the use of the state actors in that civil case, the use of Bill Carter and that civil case to gain information. So that's our position, Judge Shepard, that those are intertwined and through permissive jurisdiction that the district court in the Southern District could still hear that. So, as I understand your position, it is that the problem is that you think the district court exceeded the scope of the remand. Yes, Judge. It's not that the district court couldn't consider the state law claims. No, Judge. And the district court did consider the state law claims in an earlier decision. It denied the defendant's motion to dismiss. The defendants appealed every one of those denials and the Eighth Circuit, this circuit, provided a limited remand saying only for the district court to address qualified immunity, not all the other claims. So, it's our position. They had their bite of the apple and they're not supposed to get a second in the words of the case law. If there are no other questions at this time, I'll reserve my remaining three plus minutes. Thank you very much. You're welcome. Good morning, your honors. May it please the court. My name is Patrick Valencia and I represent the state appellee, Agent Ludwig, here. This case presents a straightforward application of the qualified immunity principles to three Section 1983 claims that Mr. Carter brings against Agent Ludwig. The first, Count 1, is a false arrest Fourth Amendment claim. Counts 2 and 6 are substantive due process claims, the first raising a theory of concealment of evidence and the second raising a failure to investigate theory. Though each of these claims fails under both prongs of the qualified immunity analysis, this court doesn't need to address both prongs. The cleanest way through this case is under the second prong, which requires Mr. Carter to demonstrate that the law confirming his constitutional right was clearly established at the time. For each of those claims, Mr. Carter fails to meet that burden. He relies on cases establishing a different right than the one he alleges, like when he relies on substantive due process cases in support of his Fourth Amendment claim, or he relies on cases with substantially different facts, like when he relies on coerced confession cases or warrantless arrest cases, where each of those key facts are not alleged here. Sometimes Mr. Carter even conceives that his theory is novel, like he does at Appendix Page 173 for his concealment of evidence claim. Each of those flaws is fatal to each of Mr. Carter's claims. Turning to the first, Count 1, the false arrest Fourth Amendment claim, during my friend on the other side's time, he referenced the Kuhl case, the Wilson case, but both of those are not applicable here. Starting with the Kuhl case, that's a warrantless arrest case. Their officers arrested somebody on the scene of a fight at a store. Here, you have an arrest pursuant to a warrant. The similarities are none. The second case, the Wilson case, is a coerced confession case. You sort of had double coercion there. You had a witness who was alleged to be coerced, who then implicated the defendant. Officers then relied on that manufactured evidence to bring in the defendant in that case, who was mentally impaired, coerced him based on that manufactured evidence. We have none of those facts here. We have no facts of any coerced confession from Mr. Carter himself. We have no facts of a coerced confession from a witness who implicated Mr. Carter. We have none of those same facts here. Mr. Carter then relies on Neal and Lewis cases. Both of those are substantive due process cases. That's the full gamut of cases he relies on in support of his Fourth Amendment false arrest claim. This Court need not proceed to the first prong, qualified immunity, but even if it did and it decided the first prong, there's no constitutional violation. This was an arrest pursuant to a warrant. To pierce that warrant to show that the arrest was a false arrest, Mr. Carter must show one of two things. He must show that there was a deliberate lie placed in that warrant by Agent Ludwick, or second, he must show that there were omissions that were misleading from that warrant. Part of that omissions inquiry is if those omissions had been included in the warrant, they must then have negated probable cause. He's not able to do any of those things. If you look at the complaint, paragraph 62, that's where he alleges a conclusory allegation of, well, there were lies put in the affidavit. He doesn't tell you what the lies were. He really relies on this omissions part. He goes through the five statements in the affidavit and says, Agent Ludwick should have put more in the affidavit. He should have told the judge reviewing that affidavit everything, the whole picture. There was nothing misleading. Even if all those allegations of omitted facts were included, there still would have been probable cause because at the end of the day, you had a suspect here who knew information that only the killer would have known. You had a suspect who lied about material evidence directly to law enforcement. Now, Mr. Carter does point his finger at 17 other suspects that might have been implicators, 17 other people. The majority of those were interviewed, as he alleges in his complaint. Those were not based on reliable evidence. Those were not corroborated by independent evidence at the crime scene. On prong one, he fails on the false arrest. As to counts two and six, they're both substantive due process claims. The first step of a substantive due process claim is you must show a fundamental right. It's unclear what fundamental right Mr. Carter is alleging here. Oftentimes, in these substantive due process cases, like this Court's case in Johnson v. McIver, the alleged right is the right to a fair criminal trial. Mr. Carter was acquitted at his criminal trial. There was no post-trial deprivation of liberty. As this Court said in Johnson v. McIver, this pre-trial deprivation of liberty that he's alleging is really a false arrest Fourth Amendment claim. That's count one. Counts two and six, it's unclear what fundamental right he's alleging. Even if we get to the second step of a substantive due process violation, he must show the conduct shocks the conscience. Of course, prong two of qualified immunity, he must show that these were clearly established. On count two, the concealment of evidence claim, Mr. Carter conceded that that claim was novel. He doesn't have any cases that show with even similar facts. On count six, the failure to investigate theory, Mr. Carter again relies on the Wilson case to show this was clearly established. Though that is a substantive due process case, he's talking about a case that confirms the correct right, the facts again have nothing to do with this case. On the first prong, as to count six, whether there was actually a constitutional violation, there was no failure to investigate here. This was a two and a half years long investigation. Many of the suspects Mr. Carter points to were in fact investigated. He's just upset that not everybody, that every single inconsistency wasn't aligned with the ultimate decision to arrest Mr. Carter. Like this court's case in Schaefer v. Berenger and others, in Winslow, in Johnson v. Moody, in Kingsley, in Clemens, you're never going to have a criminal investigation, almost never going to have a criminal investigation where there's no inconsistencies at the end of the day. Officer's duty is to follow the reliable evidence. That's what Agent Ludwig did here. He followed the reliable evidence that was corroborated by direct physical evidence at the scene and by Mr. Carter's inconsistent statements directly to law enforcement. That led them to have probable cause to arrest Mr. Carter pursuant to a warrant. There are no questions. I would ask this court to affirm the judgment below. Thank you. Well, I have a question. Why did the, why does the court have jurisdiction over the state law claims? Your Honor, the state law. Having disposed of the federal claims on qualified immunity. Your Honor, I should clarify. The state law claims are as to the county appellees. I'm representing the state appellee. Ms. Trenvillen will be representing the county appellees with the rest of the appellee's time. Thank you. My last card. Good morning. May it please the court, counsel. My name is Kathy Trenvillen and I represent the other appellees in this matter, Deputy Kias and the Marion County. Mr. Carter was arrested, charged and prosecuted. Yes, Your Honor. Could you get my question out of the way and then you can proceed? Yes. Why, having disposed of the federal claims on qualified immunity, why did the district court have jurisdiction or how does the district court have jurisdiction then to consider and decide the two state law claims? To the extent, Your Honor, that that is an issue related to the scope of remand. The analysis. It's really not a question about the scope of remand. It's just a question of jurisdiction. The court had supplemental jurisdiction, so it could exercise supplemental jurisdiction once they allege the federal claims. The federal claims created federal question jurisdiction and the court could exercise supplemental jurisdiction. In order to do that, don't the state law claims have to be intertwined with the federal claims and with the matters that the court looked into in deciding qualified immunity? Well, Judge, I think they would be hard-pressed to argue that these are not inextricably intertwined. The abuse of process and malicious prosecution claims are both based on the alleged reckless investigation as well as the alleged lack of probable cause. As part of the court's there were constitutional violations based on a reckless investigation and whether there was a false arrest based on lack of probable cause. It's almost impossible to address the state law claims separate and apart from the federal claims. Did I answer your question? Well, so your position is that it was appropriate and the court had jurisdiction to proceed and address the state law claims? Yes. It's also our position, Your Honor, that it did not exceed the scope of remand. When the court remanded the case, it simply said you need to address the issues of qualified immunity and you need to do that in a reasoned opinion that can be reviewed on appeal. There was nothing in that remand order that limited the scope of what the court was allowed to consider. The court, when it came back down, gave the parties an opportunity to renew their motions to dismiss. The parties renewed their motions to dismiss on all accounts and the court considered that. In U.S. v. Hunt and Tri-State Financial, in terms of talking about the scope of remand, the courts have said that unless the court puts a limitation on the court when it remands, the court is free to address any issues that are properly before it. And in this case, the court addressed issues that were properly before it. Well, the reason I got into the question, one of the claims at least seemed to be devoted or based entirely on an allegation that there was impropriety with respect to the civil action. Yes. And I didn't see that that had anything to do with the federal claims and the qualified immunity analysis with respect to those claims. So there were the two state law claims, malicious prosecution and abusive process. Both of those on their alleged involvement with what they would describe as collusion with the civil plaintiffs, which is also tied to their claim that there was a substantive due process violation for allegedly not divulging exculpatory evidence during the course of that civil case. And so the abusive process case is intertwined with their substantive due process argument because their substantive due process argument, which as my friend pointed out, was completely novel, is that somehow the officers had an obligation to produce what they described as exculpatory evidence, but I would argue is not exculpatory evidence. And as the court is looking at this case, I think it's important to keep in mind that there's a lot of combination discussions about defendants and law enforcement very specifically. But when you are looking at the analysis, you know, Deputy Caius is not responsible for anything that Officer Ludwig did. And so when they're talking about a lot of these issues, it's important to keep in mind that Deputy Caius was not involved in the alleged allegations. He wasn't allegedly involved in, you know, disclosing information and violating the sequestration order. He didn't draft the probable cause or the arrest warrant affidavit. They don't even allege that he actually did the arresting. He was not the recipient of the subpoena that they claim we failed to produce information for. And in fact, when you're talking about whether there's a clearly established right, in order to get to that point with Deputy Caius, you have to establish that he had an obligation to seek out third-party information that was in the possession of the Department of Criminal Investigations and then voluntarily produce that information when he was under no legal obligation to do so because he was not subject to the subpoena. So, Your Honor, I think that the abuse of process claim and the malicious prosecution claims are both inextricably intertwined and they were properly decided by the court. You know, the court ferreted through a 500-paragraph allegation, 77 pages, and wrote a 73-page opinion that went through it in great detail. The only things that it relied on outside of those allegations were specifically the arrest warrant, which clearly was implicated by the complaint, the probable cause affidavit, a preliminary hearing order, and then the proceedings on the motion to vacate in the civil action and the Iowa Supreme Court's opinion in that. Those were all matters that were embraced by the pleadings and in many cases formed the very foundation of the allegations that were being asserted against the defendants. So, to the extent that they are claiming that the court exceeded the scope of remand or considered matters outside of the pleadings, I think their arguments fall flat. We would ask the court to affirm unless there are no other questions. Hearing none, thank you, Ms. Trentville. Mr. Olson, while you're coming up, which of the documents or matters relied upon would you claim are not embraced by the pleadings? Your Honor, thank you. I can address that. There were primarily in the state through the Attorney General's office, not Caius, talks a lot about the Carter v. Carter Supreme Court decision, as does the district court below. The factual findings in that case differ drastically from our allegations in our petition. That's the sort of information that I caution does contradict the facts that are to be assumed true. Some of the specific information is there's a discussion about the potential time frame in which Jason allegedly could have murdered his mother. That's information that's within the Carter v. Carter decision because that's the information that was put into the record in the civil case. The problem is the actual information that the defendants knew, not only at the civil case when they testified, but also years before, was that time frame that Jason had said was inaccurate based on objective video evidence and medical information that was told to the state. That's the sort of information that is contradictory to our complaint. It's our position that the court exceeded what it could do on a 12B6 motion. It should have been turned into a motion for summary judgment. I'd like to discuss a couple things very quick. First of all, our petition alleges Caius and Marion County hid evidence intimidated witnesses and knew of information. Caius was not someone who just showed up at the last minute and didn't know anything. He was the detective in charge of Marion County and, as we've alleged, the right-hand man of Ludwick. They walked in lockstep through this investigation, both meeting with Bill Carter dozens of times and sharing information, both intimidating witnesses, both hiding information. In fact, Caius knew that that box of 80 discs was in the evidence locker. That information was not provided to defendants until the Friday before a Tuesday trial started, when I just happened to go down to view the physical evidence and found a box of 80 discs. It's just before the criminal trial or the civil? It was, Your Honor. The criminal trial. Before the criminal trial. Proceed.  Dismissing concerned citizens as wannabe informants is insulting and it contradicts the evidence. There weren't 17 suspects. There were three and a couple other people who admitted to being accessories after the fact. They're not inmates seeking deals. These are private citizens. If the defendants had that information and were seeking a search warrant, they would bolster the credibility of these people, saying, look at them. They're just concerned citizens coming with information on their own. The fact that now they're trying to undercut the exact specific, credible, and corroborated information that we have pled is laughable, for lack of a better way of putting it. There was intimidation and deception, concealed evidence, fabricated and distorted evidence, and unethical conduct. No fact. This information should be seen by and heard by a civil jury. I see I'm over time. We ask that every single one of these counts be reversed for additional proceedings. Thank you very much. It's been an honor. Thank you.